IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

REGINA KNAUB,                           :

        Plaintiff                   :

                             :

        vs.                         :        CIVIL NO. 1:CV-10-2296

                             :

DENNIS TULLI,                           :
COMMONWEALTH CONNECTIONS
ACADEMY,                                :
        Defendants

## M E M O R A N D U M

### I.  *Introduction*

        Plaintiff, Regina Knaub, filed a complaint against defendants, Commonwealth Connections Academy (CCA), a public cyber charter school, and Dennis Tulli, CCA's chief executive officer.  Knaub was a teacher at the school and alleges that she was suspended and eventually terminated because she spoke on behalf of a non-CCA student at a meeting intended to develop an individualized education program (IEP) for the student.  Plaintiff makes claims for the violation of: (1) procedural due process, (2) substantive due process, and (3) equal protection.  She also makes claims alleging retaliation in violation of: (1) the First Amendment; (2)the Americans with Disabilities Act (ADA); (3) the Individuals with Disabilities in Education Act (IDEA); and (4) the Rehabilitation Act (RA).

        Defendants have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff has failed to allege any meritorious claims.

II.   *Standard of Review*

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  On a motion to dismiss, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *Byers v. Intuit, Inc.*, 600 F.3d 286, 291 (3d Cir. 2010)(quoted case omitted).  While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570, 127 S.Ct. 1955 at 1974.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965).  Hence, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at    , 129 S.Ct. at 1949.

After *Iqbal*, in resolving a motion to dismiss, we "conduct a two-part analysis."  *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).  First, we separate the factual elements from the legal elements and disregard the legal conclusions.  *Id.* at 210-11.  Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a '"plausible claim for relief."'  *Id.* at 211 (quoted case omitted).

With this standard in mind, we provide the background to this case, as Plaintiff alleges it.

III.   *Background*

   Plaintiff avers the following.  On or about August 22, 2007, CCA hired her as a special-education teacher.  (Am. Compl. ¶ 8).  Among other duties, she was to develop IEPs (individualized education programs) for students and to communicate with parents of students with special needs to insure that their IEP goals were being met.  (*Id.* ¶ 9).

   After she completed her first school year (2007-2008), Plaintiff received a "satisfactory" rating on her individual performance evaluation and was given a salary increase of $1,500, to be paid over the 2008-2009 school year.  (*Id.* ¶¶ 10-11).  In February 2009, Plaintiff received a "satisfactory in all respects" interim performance evaluation.  (*Id.* ¶ 12).

   On April 30, 2009, on her own time and without compensation, Plaintiff attended a meeting held for a friend's autistic child to determine the student's IEP.  (*Id.* ¶ 14).  The student was receiving educational services from the Capital Area Intermediate Unit in a school located in the Middletown Area School District.  Defendant CCA is not directed by, or under the control of, either of these entities.  (*Id.* ¶ 13).

   Before the meeting, CCA had never advised Plaintiff that she was prohibited from advocating on behalf of special-needs children.  (*Id.* ¶ 19).  Nor did Plaintiff represent herself at the meeting as being an employee of Defendant CCA or as acting on its behalf.  (*Id.* ¶ 18).  Instead, Plaintiff attended the meeting "as an advocate" for the student.  (*Id.* ¶ 14).

   The Intermediate Unit's proposed IEP "did not include a positive behavior support plan . . . ."  (*Id.* ¶ 15).  Plaintiff believed this plan "was necessary for the safety of the child . . . ."  (*Id.*).  Plaintiff "expressed her opinion that the IEP was not satisfactory

without" such a plan, (*id.*), and the Intermediate Unit "reluctantly" agreed to include the plan in the student's IEP.  (*Id.* ¶ 16).

On or about May 1, 2009, a representative of the Intermediate Unit complained to Plaintiff's supervisor about Plaintiff's "having advocated on behalf of" the student.  (*Id.* ¶ 20).  On or about May 7, 2009, defendant Tulli suspended Plaintiff from her employment and told her that he was going to recommend that CCA's board terminate her employment "because of her advocacy on behalf of the disabled child."  (*Id.* ¶¶ 21-22).  Tulli told Plaintiff that she could resign to avoid having a termination on her work record.  (*Id.* ¶ 23).

On May 22, 2009, defendant CCA's board did not terminate Plaintiff but did vote to suspend her without pay.  (*Id.* ¶ 25).  Additionally, "Tulli directed Plaintiff's supervisor to give her an unsatisfactory evaluation for the entire school in all respects" even though Tulli knew that Plaintiff's performance was not unsatisfactory in all respects. (*Id.* ¶¶ 26-27).

Around May 13, 2010, Plaintiff filed complaints with the Pennsylvania Human Relations Commission (PHRC) and the United States Equal Employment Opportunity Commission (EEOC), (*id.*, ¶ 28), basing her complaints on the actions taken against her by Defendants.  *Id.*  Defendants repeatedly asked Plaintiff to withdraw her administrative complaints, but Plaintiff refused to do so.  (*Id.* ¶¶ 30-31).

Plaintiff has made the following complaints to the management of CCA. First, "Plaintiff has . . . repeatedly complained to management of CCA about repeated confidentiality violations by staff employees in violation of federal and state law."  (*Id.* ¶ 31).  Second, Plaintiff "complained to management of CCA about the lack of CCA's repeated failure to follow student's IEPs."  (*Id.* ¶ 33).  "Plaintiff's complaints were made . . . for the purpose of having the Defendants comply with the requirements of federal and

4

state law relating to special needs children and not for reasons personal to herself." (*Id.* ¶ 34).

Around October 26, 2010, Tulli informed Plaintiff by letter that he was recommending that CCA's board terminate her employment the next day but did not specify any charges or evidence against her. (*Id.* ¶¶ 35-36). On October 27, 2010, defendant CAA terminated Plaintiff's employment without either a pre- or post-termination hearing, and with Tulli presenting "bogus reasons" for the termination. (*Id.* ¶¶ 36-37, 39-40). CAA terminated her employment, which Plaintiff characterizes as a "property right," (*id.* ¶ 39), because she refused to withdraw her complaint with the PHRC and the EEOC and because of "her continued efforts to have CCA comply with federal law." (*Id.* ¶ 37). Plaintiff alleges that the actions of the defendants damaged her reputation "and will make it difficult to obtain employment as a special education teacher." (*Id.* ¶ 44).

Other teachers at CCA, similarly situated to the Plaintiff, had participated in IEP meetings outside of their employment and had made internal complaints about CCA's compliance with federal and state law, but these teachers had not been suspended or terminated, and there was no rational basis for Defendants to treat Plaintiff differently. (*Id.* ¶¶ 38-39).

In Count I of the complaint, Plaintiff alleges that the defendants' conduct violated her rights to: procedural due process, substantive due process, equal protection, and against retaliation for the exercise of her First Amendment rights. In Count II, she asserts their actions violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12117. In Count III, she asserts their actions violated the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, et seq. In Count IV, she asserts the defendants' actions violated the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794 and 42 U.S.C. § 1983. As a remedy, Plaintiff seeks damages in excess of $75,000.

IV.   *Discussion*

     A.      *Plaintiff Fails to State a Procedural*
            *Due Process Claim*

        To state a claim for deprivation of procedural due process, a plaintiff must allege that "(1) [she] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [her] did not provide 'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006).

        Plaintiff presents two procedural due process claims.  First, she contends she had a property interest in her job so that CCA could not terminate her without giving her a hearing, either before or after her discharge.  Second, she contends she had a liberty interest in not being discharged when that discharge was accompanied by defamatory remarks.

      1.   *Property Interest*

        We deal first with the claim based on a property right in employment.  A person can have a property interest in a government job if she has a legitimate entitlement to it, not just a unilateral expectation of continued employment.  *Hill*, 455 F.3d at 234.  State law determines if a property right exists, *id.*, and a state law entitling a public employee to retain her position unless her job performance is deficient or she exhibits bad character creates such a property right.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

        Here, Plaintiff relies on the Public School Code, 24 Pa. Stat. Ann. § 11-1122(a) (West Supp. 2010) to create the property interest.  If applicable, section 11-1122(a) would appear to create that interest since it conditions discharge essentially on

good cause.[1]  However, as Defendants correctly point out, Plaintiff is not covered by this provision because she was a teacher at a cyber charter school.  As provided in 24 Pa. Stat. Ann. § 17-1715-A(1), "a charter school is exempt from statutory requirements established in [the Public School Code]" "except as otherwise provided in" Article 17-A.[2] Under 24 P.S. § 17-1749-A(a), cyber charter schools are subject to numerous provisions of the Public School Code.  But section 11-1122 is not included.  Thus, Plaintiff's reliance on section 11-1122 is misplaced, and that statutory section cannot provide the required property interest.

In her opposition brief, Plaintiff also asserts that she has a property interest because she had a written contract with CCA.  As Defendants point out, the first difficulty with this position is that we are dealing only with the allegations of the complaint, and Plaintiff did not allege she had a written contract with CCA, just that CCA had hired her. Nonetheless, even if we considered her allegation, it would not be sufficient as the mere existence of a contract does not create a property right.  *See Unger v. Nat'l Residents Matching Program*, 928 F.3d 1392, 1397-98 (3d Cir. 1991).  Plaintiff would have a property right if she had an employment contract that allowed termination only for just

---

[1]  In pertinent part, section 11-1122 provides as follows:

(a) The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality; incompetency; unsatisfactory teaching performance . . . . persistent negligence in the performance of duties; wilful neglect of duties . . . .

[2]  Article 17-A is designated "the Charter School Law."  24 Pa. Stat. Ann. § 17-1701-A.

cause, *see Dee v. Borough of Dunmore*, 549 F.3d 225, 231 (3d Cir. 2008), but Plaintiff does not argue that the written contract contains such a provision.[3]

>    2.   *Liberty Interest*

The Due Process Clause of the Fourteenth Amendment protects a liberty interest in reputation only when the plaintiff shows a "stigma" to reputation "*plus* deprivation of some additional right or interest." *Hill*, *supra*, 455 F.3d at 236. Under the "stigma-plus" test, when a public employer "'creates and disseminates a false and defamatory impression about the employee in connection with [her] termination,'" due process applies and the employee is entitled to a "name-clearing hearing." *Id.* (quoted case omitted). The "stigma" is the "creation and dissemination of a false and defamatory impression . . . ." *Id.* It must be made publicly. *Id.*

In moving to dismiss this claim, Defendants argue that Plaintiff has failed to allege that the reason given for her termination was false or that it was made publicly. Defendants point out that Plaintiff does not allege that Tulli's stated reason for recommending her discharge, her advocacy at the IEP meeting, was false, or that it was stated to the public.

We need not address the first part of this argument, although it ignores Plaintiff's allegations that Tulli ordered that Plaintiff be given a false employment evaluation. We agree with the second part of the argument. Plaintiff's stigma-plus claim fails because Tulli did not make any remarks publicly. Plaintiff argues that they were public because Tulli spoke to the board. However, remarks made to the board for the purpose of inducing Plaintiff's firing are not public and hence fail to satisfy that aspect of

---

[3]    Plaintiff has submitted a copy of the contract (doc. 14 CM/ECF p. 1) in connection with her opposition to dismissal. Even if we were to consider this document on a Rule 12(b)(6) motion, it does not have a "just cause" provision.

the stigma-plus test.  *Compare Hill*, 455 F.3d at 236 (remarks made to the employee's colleagues, at borough council meetings and in newspaper articles were made publicly).

      B.     *First Amendment Retaliation Claims*

      "To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action."  *Hill*, 455 F.3d at 241.  "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made."  *Id.* at 241-42 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 419, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006)).

      A public employee does not speak as a citizen when she makes a statement "pursuant to [her] official duties . . . ."  *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689 (2006).  "'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Gorum v. Sessoms*, 561 F.3d 179, 187 (3d Cir. 2009)(quoting *Connick v. Myers,* 461 U.S. 138, 147-48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).  "'The content of speech on a matter of public concern generally addresses a social or political concern of the community . . . ."  *Id.* (quoted case omitted).

      Plaintiff has identified two bases for a First Amendment retaliation claim: (1) retaliation for advocating on behalf of a friend's autistic child that the child's IEP include a positive behavior support plan; and (2) retaliation for complaining to management of CCA about repeated breaches of confidentiality by staff employees in violation of federal and

state law and for complaining to management of CCA about the failure to follow students' IEPs.

We deal first with the claim based on Plaintiff's advocacy at the IEP meeting.  Defendants argue that this cannot be the basis of a First Amendment retaliation claim because Plaintiff was not speaking on a matter of public concern, one of the elements of the cause of action, but instead on behalf of one child in a private meeting. Defendants cite in support *Gorum, supra.*

We agree with Defendants that *Gorum* is dispositive of Plaintiff's attempt to rely on her remarks at the IEP meeting.  In *Gorum*, the Third Circuit held that a university professor's assistance to a student during the student's disciplinary proceedings was not activity protected by the First Amendment because, in part, it did not involve a matter of public concern.  As the Third Circuit stated: the "'speech'" at the "disciplinary hearing related to the personal grievance of one student.  There [was] no evidence in the record that Gorum even made a public statement.  There [was] no proof that he thought any public policy issues were at stake." 561 F.3d at 187.  The court added that even if Gorum raised matters of public concern, it could not ignore the manner or context in which the statement was made, a hearing that would have an impact on the student's future as a professional athlete, not on a matter of public concern.  *Id.*

*Gorum* controls here because the IEP meeting is the equivalent of the student disciplinary hearing.  As Plaintiff alleges, her speech at the meeting dealt only with the needs of the particular student and how that student's particular IEP needed a positive behavior support plan.  (Am. Compl. ¶ 15).  She attended the meeting "as an advocate" for the student.  (Am. Compl. ¶ 14).  As in *Gorum*, her speech was not on a matter of public concern and thus cannot be the basis of a First Amendment retaliation claim.

In arguing that the claim is valid, Plaintiff relies on *McGreevy v. Stroup*, 413 F.3d 359 (3d Cir. 2005).  In *McGreevy*, among other things, the plaintiff had advocated on behalf of two disabled students by contacting a representative of the Pennsylvania Department of Education and speaking about the students' particular circumstances.  *Id.* at 362.  The Third Circuit stated that this constituted speech on a matter of public concern and hence was protected activity for a First Amendment retaliation claim.  Based on *McGreevy*, Plaintiff argues that her speech in support of a disabled child is likewise protected activity.

We think Plaintiff's reliance on *McGreevy* is misplaced for two reasons. First, as the Third Circuit noted in *McGreevy*, the defendants there did not dispute that the plaintiff's speech about the students was on a matter of public concern.  *Id.* at 365. Here, Defendants did contest the issue.  Second, the plaintiff in *McGreevy* had, in any event, engaged in other speech that was plainly on matters of public concern: (1) her notice to state officials that she was not the middle school nurse (meaning that the middle-school students did not have the care of a registered nurse); and (2) her criticism of the defendant school district for using an unlicensed individual to conduct pesticide spraying (endangering the health of students and teachers).  *Id.* at 361, 362 n.3, and 365.

We turn now to the other basis for the First Amendment retaliation claim: Plaintiff's internal complaints to CCA management about repeated breaches of confidentiality by staff employees in violation of federal and state law and about the failure to follow students' IEPs.

Defendants argue that these complaints, "voiced internally to her employer," cannot be the basis of a retaliation claim "because they were made in the course and scope of her employment as a special education teacher with CCA."  (Defs.' Supporting

11

Br. at pp. 13-14).  Defendants cite *Garcetti, supra; Hill, supra*; and *Foraker v. Chaffinch*, 501 F.3d 231 (3d Cir. 2007), in support.

We reject this argument.  "Course and scope" is the wrong language to use. As Plaintiff observes in her opposition brief, *Garcetti* excludes from First Amendment protection a public employee's statements made "pursuant to [her] official duties."  547 U.S. at 421, 126 S.Ct. at 1960, not statements made in the course and scope of employment.  In *Garcetti*, the plaintiff's retaliation claim failed because he admitted his statements were made pursuant to his official duties.  Here, on the other hand, as Plaintiff points out, she makes no allegations that her complaints were made as part of her official duties, and in her brief she denies that they were.  *Garcetti* does not require dismissal of the First Amendment retaliation claim based on the internal complaints.  Of course, that may change if discovery shows that the complaints were in fact part of Plaintiff's official duties.

As noted above, one of the elements of the cause of action is that the public employee speak as a citizen.  In their reply brief, Defendants argue that the complaints were not made as a citizen because: (1) Plaintiff made them internally to her superiors, rather than, for example, raising them in a public forum; and (2) the complaints were about conditions at work.  In support, they cite *Cindrich v. Fisher*, 341 F. App'x 780 (3d Cir. 2009)(nonprecedential), and *Kline v. Valentic*, 283 F. App'x 913 (3d Cir. 2008)(nonprecedential), both cases dealing with employee speech that went "up the chain of command."

We reject this argument.  As the Supreme Court noted in *Garcetti*, it is not dispositive that the employee "expressed [her] views inside [the] office, rather than publicly."  547 U.S. at 420, 126 S.Ct. at 1959.  Additionally, "[t]he First Amendment protects some expressions related to the speaker's job."  *Id.* at 421, 126 S.Ct. at 1959.  In

regard to the latter point, while Plaintiff's complaints were job-related, they did deal with matters of public concern as the public would be interested in whether a public school was abiding by federal and state law respecting confidentiality and in following student IEPs. *Gorum, supra,* 561 F.3d at 187 ("'The content of speech on a matter of public concern generally addresses a social or political concern of the community'") (quoted case omitted).

Defendants reliance on *Cindrich* and *Kline* is misplaced as those cases are distinguishable. *Cindrich* was decided at the summary-judgment stage, so the court, in citing *Garcetti*, had a record showing that when Cindrich sent memos and e-mails up "the chain of command," she was doing so as part of her official duties. 341 F. App'x at 787. The case quoted by the court, *Mills v. City of Evansville*, 452 F.3d 646 (7th Cir. 2006), was also decided on summary judgment. *Kline* is factually distinguishable. In that case, the plaintiff, a state police officer, made complaints "up the chain of command" about an internal affairs investigation directed at him. Because he had not spoken publicly and because his complaints dealt with his own official conduct being called into question, the court decided that he was not speaking as a citizen and affirmed dismissal of the claim. Here as noted, Plaintiff was speaking on a matter of public concern.

Based on the foregoing, the First Amendment retaliation claim based on retaliation for advocating on behalf of a friend's autistic child at an IEP meeting will be dismissed. The claim based on internal complaints to CCA management will be allowed to proceed.

C.      *The ADA and RA Retaliation Claims*

Plaintiff has clarified in her brief that her ADA and RA claims are retaliation claims based on her May 2009 suspension and October 2010 termination, which she

says were retaliation for her advocacy at the IEP meeting.  She pursues the RA claim under 29 U.S.C. § 794, § 504 of the act.

Defendants argue that both claims fail because Plaintiff's advocacy is not protected activity under either statute because she was not protesting "unlawful discrimination against her friend's child, or against special needs children more broadly." (Doc. 15, Defs.' Reply Br. at p. 11).  In support, Defendants cite *Montanye v. Wissahickon Sch. Dist.*, 218 F. App'x 126, 131 (3d Cir. 2007)(nonprecedential).[4]  We disagree because *Montanye* is distinguishable.  The plaintiff's activity in that case consisted of accompanying the minor student to psychological therapy sessions, sessions unrelated to school requirements.  The Third Circuit said that this was not protected activity because it was "mere assistance" to a special-education student, *id.* at 131, and protected activity under either statute, in relevant part,  requires something more, conduct "oppos[ing] any act or practice made unlawful" by the relevant statute, or conduct in which the plaintiff "'made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under the ADA or Rehabilitation Act." *Id.* at 131.[5]  The Third Circuit did add that protected activity "requires affirmative action in advocating for, or protesting discrimination, related to, unlawful conduct by others," *id.*, but this was in response to the particular argument the plaintiff in that case made, that she had provided "special assistance, advocacy and support."  *Id.*  The court of appeals did not intend to limit protected activity to advocacy against unlawful discrimination.  We think Plaintiff's activity was protected as participation or assistance in a proceeding involving the minor child's IEP.

---

[4]     Both kinds of retaliation claim have as an element that the plaintiff engaged in protected activity.  *Montanye*, 218 F. App'x at 131.

[5]     The court quoted 42 U.S.C. § 12203(a), the ADA's retaliation provision.  That provision also governs the RA claim by virtue of 29 U.S.C. § 794(d).

Defendants next argue that Plaintiff has failed to exhaust administrative remedies on her ADA and RA claims.[6]  Since Plaintiff alleges she pursued administrative remedies on her May 2009 suspension, we reject this argument as to that aspect of the retaliation claims based on the suspension.

However, we agree with Defendants that we must dismiss the retaliation claims as they are based on her October 2010 termination.  Conceding she did not exhaust her remedies on her discharge, Plaintiff asserts we should nonetheless consider this claim in the interest of judicial economy.  We reject this position.

We could adjudicate these claims, even if they were not specifically raised administratively, if the investigation potentially resulting from the charge of discrimination could reasonably be expected to have included the omitted claims.  *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 966 (3d Cir. 1978)("Once a charge of some sort is filed with the EEOC, this court has held that the scope of the resulting private civil action in the district court is 'defined by the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination'")(quoted case omitted).  In *Hicks*, in deciding what the scope of the investigation would have been, the Third Circuit looked to the factual averments supporting the claim and how similar they were to the administrative complaint.

In the instant case, the factual averments supporting the retaliation claims for the October 2010 discharge are completely different from the averments supporting the May 2009 suspension.  We therefore conclude that we cannot adjudicate the former claims because of Plaintiff's failure to exhaust them.  *See also Barzanty v. Verizon Pennsylvania, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010)(nonprecedential)(quoting *Hicks* in refusing to allow  a plaintiff to pursue an unexhausted claim of a hostile-work

---

[6]   Plaintiff does not argue that she need not exhaust either claim.

environment when it was based on occurrences separate from the claim presented in the administrative complaint of a gender-based discharge).

V.   *Conclusion*

Plaintiff has admitted that her equal-protection claim is invalid.  (Pl.'s Answer to Defs.' Mot. ¶ 8).  She has also not briefed her substantive due process claim or her IDEA claim, which we take as an abandonment of those claims.  We also note that her 42 U.S.C. § 1983 claim based on the RA retaliation claim lacks merit.  *A.W. v. Jersey City Public Sch.*, 486 F.3d 791, 805-06 (3d Cir. 2007)(en banc).  The following claims will therefore be dismissed: (1) the procedural due process claim, (2) the substantive due process claim, (3) the equal protection claim, (4)  the First Amendment retaliation claim based on Plaintiff's advocacy at her friend's child's IEP meeting, (5) the IDEA claim, (6) the ADA and RA retaliation claims based on Plaintiff's October 2010 discharge, and (7) the section 1983 claim based on the RA claim.  The following claims remain: (1) the First Amendment retaliation claim based on Plaintiff's internal complaints about repeated breaches of confidentiality by staff employees in violation of federal and state law and for complaining to management of CCA about the failure to follow students' IEPs; and (2) the ADA and RA retaliation claims based on Plaintiff's May 2009 suspension.

We also note that Defendants have objected to section 1983 liability against Tulli in his official capacity because suit against him in this capacity is duplicative of the claim against CCA.  Defendants also object to Tulli being a defendant on the ADA and RA claims because there can be no individual liability on those claims.  Plaintiff concedes the latter point and argues that Tulli should remain in the case in his individual capacity on the civil-rights claim.  In our order disposing of the motion to dismiss, we will provide

that on the First Amendment claim Tulli is sued only in his individual capacity and that he is not a defendant in the ADA and RA claims.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: April 21, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

REGINA KNAUB,                          :

      Plaintiff                  :

                              :

      vs.                        :          CIVIL NO. 1:CV-10-2296

                              :

DENNIS TULLI,                          :
COMMONWEALTH CONNECTIONS
ACADEMY,                               :
      Defendants

*O R D E R*

      AND NOW, this 21st day of April, 2011, it is ordered that Defendant's motion (doc. 9) to dismiss is granted in part and denied in part as follows:

      1.  The following claims are dismissed: (1) the procedural due process claim, (2) the substantive due process claim, (3) the equal protection claim, (4) the First Amendment retaliation claim based on Plaintiff's advocacy at her friend's child's IEP meeting, (5) the IDEA claim, (6) the ADA and RA retaliation claims based on Plaintiff's October 2010 discharge, and (7) the section 1983 claim based on the RA claim.

      2.  On the remaining First Amendment retaliation claim, Tulli shall be liable only in his individual capacity and shall not be liable on the ADA and RA claims.

      3.  In all other respects, the motion is denied.

            /s/William W. Caldwell
           William W. Caldwell
           United States District Judge